UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD HOLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-1323 |
| | ) |
| WEXFORD HEALTH SOURCES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This case is before the Court on Plaintiff's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 343); the Response filed by Defendant Wexford Health Sources, Inc. (Wexford) (Doc. 355); and the Response filed by Defendant Latoya Hughes, the Acting Director of the Illinois Department of Corrections (IDOC) (Doc. 356). For the following reasons, Plaintiff's Motion is DENIED.

## BACKGROUND

Plaintiff Richard Holman, an inmate at Pontiac Correctional Center (Pontiac), is proceeding on a Fourth Amended Complaint under 42 U.S.C. § 1983 against Defendants IDOC, former Acting Director Rob Jeffreys[1], Dr. Andrew Tilden[2], Riliwan Ojelade, Cheryl Hansen, and Wexford. (Doc. 232).

In Counts III and V, Plaintiff alleges Defendants Wexford and Hughes violated the Eighth Amendment through deliberate indifference to his serious medical needs. *See*

---

[1] Under Fed. R. Civ. P. 25(d), Acting Director Latoya Hughes is automatically substituted as a Defendant for former Acting Director Rob Jeffreys.
[2] Defendant Dr. Andrew Tilden died on February 19, 2023. (Doc. 328). On June 26, 2023, Pamela E. Hart, the administrator of his estate, was substituted as a Defendant. (d/e 6/26/2023).

1

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978). Specifically, Plaintiff claims his medical providers' failure to refer him for a follow-up appointment to the University of Illinois Chicago Pain Clinic (UIC) for a lumbar epidural steroid injection (LESI) when he requested it in November 2017 resulted from Defendants' unconstitutional custom and practice of failing to ensure timely and necessary outside specialty care for inmates with serious medical conditions. (Doc. 232). Plaintiff claims after initially receiving a LESI on May 24, 2017, he did not receive another one until August 6, 2020. *Id.*

On July 7, 2023, the Court denied Plaintiff's Amended Motion for Partial Summary Judgment on Liability on Counts III and V, granted Wexford's Motion for Partial Summary Judgment, and dismissed Wexford with prejudice. (Doc. 334). Further, the Court *sua sponte* granted summary judgment in favor of Defendant Jeffreys and dismissed Jeffreys with prejudice. *Id.* at 20-21. The Court held that Defendants were not liable under *Monell* because Plaintiff failed to provide sufficient evidence that the alleged failure to refer him for a follow-up appointment and another LESI was caused by Defendants' unconstitutional practice or custom. *Id.* at 19-20. First, the Court concluded that the *Lippert* Expert Reports were inadmissible, either pursuant to Federal Rule of Evidence 807 or as notice-only evidence that could prove deliberate indifference for *Monell* liability. *Id.* at 15-17. Second, the Court found that the deposition testimony of two inmates at Pontiac, James Fuller and Anthony Rodesky, did not show that Defendants treated inmates similarly situated to Plaintiff the same way. *Id.* at 17.

2

On August 4, 2023, Plaintiff filed a Motion to Alter or Amend Judgment asking the Court to vacate the Summary Judgment Order, reinstate his claims against Wexford and Jeffreys, and order them to stand trial along with the other Defendants. (Doc. 343). On August 18, 2023, Defendants Wexford and Hughes filed their responses. (Docs. 355 and 356). This Order follows.

## LEGAL STANDARD

A Motion to Alter or Amend Judgment under "Rule 59(e) allows the movant to bring to the district court's attention a manifest error of law or fact, or newly discovered evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000) (citing *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013).

To prevail on a Rule 59(e) motion based upon newly discovered evidence, the moving party must show that "(1) it has evidence that was discovered post-trial; (2) it had exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result." *Envtl. Barrier Co., LLC v. Slurry Sys.*, 540 F.3d 598, 608 (7th Cir. 2008); *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("the moving party must show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion [for summary judgment]").

3

"[A Rule 59(e) motion] 'does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" *Bordelon*, 233 F.3d at 529 (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)). "The decision whether to grant or deny a Rule 59(e) motion is entrusted to the sound judgment of the district court." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

## ANALYSIS

### I.    Declarations of James Fuller and Anthony Rodesky

In its July 7, 2023 Order granting summary judgment on Plaintiff's *Monell* claim, the Court found that Plaintiff's reliance on the testimony of witnesses James Fuller and Anthony Rodesky was insufficient. (Doc. 334). The Court noted their testimony was vague and unrelated to the alleged unconstitutional custom, policy, or practice and that Plaintiff had "nothing other than his own experience to support his *Monell* claim," which failed as a matter of law. *Id*. at 18-19.

In his Motion to Alter or Amend Judgment, Plaintiff states that in preparing for trial he identified additional testimony that Fuller and Rodesky can provide about their own medical treatment. (Doc. 343 at 10). Plaintiff submits new declarations from Fuller and Rodesky in support of his motion. (Fuller Decl., Doc. 343-1 at 1-33; Rodesky Decl., Doc. 343-1 at 34-77). Plaintiff argues that the new evidence provided in their declarations is highly probative of Wexford's and the IDOC's systemic failure to ensure timely and necessary outside specialty care for inmates with serious medical conditions.

4

In Fuller's case, Plaintiff states it was the failure to refer him to UIC for timely and necessary outside specialty care for his lumbar radiculopathy, a follow-up appointment, and surgery to remove a mass from his kidney. In his declaration, Fuller states "most of the facts about my own medical condition about which I could testify if permitted to do so at the trial of Richard Holman's case have occurred since my deposition in November 2019, some only very recently." (Doc. 343-1 at 2). Fuller then recounts experiencing back pain in late 2018 or early 2019 and lists medical treatment he received beginning in October 2019 through February 6, 2023. *Id*. at 2-6.

In Rodesky's case, Plaintiff argues it was a series of delays in referring him for outside specialty care and then the failure to follow the directions of specialists, which caused him unnecessary suffering and eventually required the amputation of his leg. Rodesky's declaration states the history of his litigation in *Rodesky v. Randy Pfister, et al.*, CDIL No. 15-1002. (Doc. 343-1 at 35). Rodesky states when he was deposed in 2019, he was unwilling to discuss his medical care at that time due to his pending case. *Id*. at 35-36. Rodesky states that before trial in November 2021, he settled his case with Wexford and the individual Wexford defendants. *Id*. Rodesky states that he is now prepared to testify to the allegations in his complaint and second amended complaint in that case. Rodesky further states he will testify to the contents of a grievance dated July 11, 2023, concerning his request for supplies for his amputation and adjustment/replacement of his prosthesis. *Id*. at 74. Rodesky, also states he has heard Pontiac medical staff, including Defendant Hansen, complain about Plaintiff. *Id*. at 37.

Defendant Wexford argues that Plaintiff's "newly discovered" evidence is an attempt to backfill the holes the Court identified in his *Monell* claim. (Doc. 355 at 2). This Court agrees. Plaintiff disclosed both witnesses in his Rule 26(a) initial disclosures on May 10, 2019, and they were deposed on November 25, 2019. Fuller's and Rodesky's declarations are not newly discovered evidence that could not have been discovered and presented with reasonable diligence. The declarations are a belated attempt to present additional evidence in opposition to Wexford's Motion for Summary Judgment, which is not allowed. *See Bordelon*, 233 F.3d at 529.

Much of the evidence contained in Fuller's and Rodesky's declarations concerns recent events which occurred after Plaintiff filed his summary judgment motion on November 30, 2022. Plaintiff argues that his ability to develop the evidence available before this date was impeded by Wexford's insistence that both Fuller and Rodesky provide their medical records if they testified about their own medical treatment at their depositions in November 2019. Since neither was willing to do this before their depositions, Plaintiff argues that Wexford prevented him from developing the evidence available at that time.

Plaintiff's explanation for why he failed to gather additional evidence from Rodesky and Fuller prior to filing his summary judgment motion is an excuse that falls flat. Any insistence by Wexford that Fuller and Rodesky release their medical records prior to testifying about their health care was entirely fair. In fact, it would have been unfair to allow lay testimony about medical treatment without the corresponding medical records. Moreover, Defendants did not prevent Plaintiff's counsel from

6

obtaining authorizations from Fuller and Rodesky or from seeking a third-party HIPAA order to obtain their medical records by subpoena. In fact, Plaintiff's counsel has been representing Rodesky since early 2023. (See Doc. 339 at 6).

To the extent Rodesky proposes to testify about a grievance he wrote on July 11, 2023, concerning a request for supplies for his amputation and the adjustment or replacement of his prosthesis, this evidence is not "newly discovered;" it did not exist when the court entered summary judgment on July 7, 2023. (Doc. 343-1 at 74). *See Peacock v. Bd. of Sch. Comm'rs of City of Indianapolis*, 721 F.2d 210, 214 (7th Cir. 1983) (evidence not in existence at the time of judgment cannot constitute newly discovered evidence under Rule 59).

Whatever investigation Plaintiff has done "in preparing for trial" could have been done prior to summary judgment. As to any facts that occurred after discovery closed on October 31, 2022, such facts are inadmissible and thus irrelevant to Plaintiff's motion. There is no reasonable basis for Plaintiff's failure to obtain information about his witnesses' medical treatment sooner. *See Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) (declining to consider affidavits submitted in support of a Rule 59(e) motion that should have been submitted in opposition to a motion for summary judgment).

II.     *Lippert* **Expert Reports**

Plaintiff argues the new declarations from Fuller and Rodesky—combined with the fact that both the IDOC and Wexford were on notice of the allegedly unconstitutional custom or practice based on the *Lippert* Expert Reports—raises a question for the jury regarding whether Wexford and the IDOC are liable under *Monell.*

7

Plaintiff claims that both the 2014 *Lippert* report on Pontiac and the 2018 *Lippert* report on Illinois prison health care put the IDOC and Wexford on notice of the existence of this custom or practice. The 2014 report stated: "With regard to scheduled offset services, we identified delays in obtaining appointments and also delays in obtaining reports and a delay in access to a procedure." (Doc. 343-1 at 83). The 2018 report stated: "Specialty care is not tracked with respect to whether it is timely" and "[p]atients are frequently not referred for specialty care when it appears indicated." *Id*. at 124, 167. Pontiac was not included among the sites visited for the 2018 *Lippert* report. *Id*. at 119.

Plaintiff argues that the custom or practice at issue "is a failure to provide timely and necessary outside specialty care for inmates at Pontiac and other Illinois state prisons." (Doc. 343 at 12). Plaintiff argues further that he will provide "overwhelming evidence establishing that Wexford's and IDOC's unconstitutional custom or practice of failing to provide timely and necessary outside specialty care was the reason why he had to endure unnecessary pain and suffering for years." (Doc. 343 at 13). Plaintiff merely rehashes the same arguments previously made concerning the admissibility of the *Lippert* Expert Reports.

Plaintiff has failed to demonstrate that the Court made a manifest error of law or fact or to present newly discovered evidence. Therefore, Plaintiff's Motion to Alter or Amend Judgment is DENIED.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) [343] is DENIED.

8

2) The Clerk is directed to substitute current IDOC Acting Director Latoya Hughes for former IDOC Acting Director Rob Jeffreys.

3) This case remains set for a Supplemental Final Pretrial Conference on September 5, 2023, at 1:30 p.m. by video.

ENTERED: 8/21/23

        s/ James E. Shadid

        JAMES E. SHADID
        UNITED STATES DISTRICT JUDGE