## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD HOLMAN, )<br><br>Plaintiff, )<br>v. )<br><br>ILLINOIS DEPARTMENT OF<br>CORRECTIONS, *et al.*, )<br><br>Defendants. ) | Case No. 18-cv-1323 |

## OPINION AND ORDER

This matter is now before the Court on Defendant Illinois Department of Corrections' ("IDOC") Motion to Vacate Judgment and for New Trial (Doc. 477) under Federal Rule of Civil Procedure 59 and Plaintiff's Amended Motion for an Award of Attorneys' Fees and Costs (Doc. 476) under Federal Rule of Civil Procedure 54(d)(2). For the reasons stated below, Defendant's Motion to Vacate Judgment and for New Trial is DENIED, and Plaintiff's Amended Motion for an Award of Attorneys' Fees and Costs is GRANTED IN PART and DENIED IN PART. The Court awards $178,305 in attorneys' fees to Winston & Strawn LLP ("Winston"), $13,000 in attorney's fees to Thomas Frederick, and $46,741.74 in expenses to Winston.

## BACKGROUND

Plaintiff Richard Holman, an inmate within the IDOC, filed a Fourth Amended Complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was incarcerated at Pontiac Correctional Center ("Pontiac"). (Doc. 232). Plaintiff alleged, *inter alia*, that Defendant IDOC violated his rights under the Americans with

Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by failing to provide reasonable accommodations for his disability (Counts I and II) and that Defendants Riliwan Ojelade, Cheryl Hansen, and Dr. Andrew Tilden[1] ("Wexford Defendants") were deliberately indifferent to his severe and chronic back and leg pain in violation of the Eighth Amendment (Count IV). *Id.*

After ruling on the parties' dispositive motions, Counts I, II, and IV remained for trial. (Doc. 334). Plaintiff filed a Motion for Separate Trial of Claims asking the Court to try his claims against Defendant IDOC and the Wexford Defendants separately. The Court granted Plaintiff's motion, and a trial on his claims against Defendant IDOC began on January 29, 2024. (Minute Entry 1/5/2024). On February 1, 2024, a jury returned a verdict for $150,000 in compensatory damages for Plaintiff and against Defendant IDOC on his ADA and RA claims. (Doc. 427). Plaintiff's claims for injunctive relief were deemed moot after he was transferred to Dixon Correctional Center, an ADA-accessible facility. (Minute Entry 4/30/2024).

On March 27, 2024, Defendants Hart and Ojelade were voluntarily dismissed with prejudice pursuant to the parties' Stipulation of Voluntarily Dismissal. (Doc. 453; Text Order 3/27/2024). Plaintiff and Defendant Hansen reached a settlement agreement during a settlement conference on July 10, 2024. (Minute Entry 7/10/2024). On August 29, 2024, Plaintiff filed a Fifth Amended Complaint to eliminate Hansen as a Defendant. (Doc. 473). Judgment was entered on August 30, 2024. (Doc. 474).

---

[1] Defendant Dr. Andrew Tilden died on February 19, 2023. (Doc. 328). On June 26, 2023, Pamela E. Hart, the Administratrix of the Estate of Andrew H. Tilden, was substituted as a Defendant. (d/e 6/26/2023).

On September 27, 2024, Latoya Hughes, in her official capacity as Acting Director of the IDOC, filed a Motion to Vacate Judgment and for New Trial. (Doc. 477). Plaintiff filed a Response in opposition on October 18, 2024. (Doc. 482).

On September 13, 2024, Plaintiff filed an Amended Motion for an Award of Attorneys' Fees and Costs. (Doc. 476). On October 23, 2024, Plaintiff filed an Agreed Motion for Leave to File Second Declaration of Johanna Rae Hudgens in Support of Plaintiff's Amended Motion for an Award of Attorneys' Fees and Costs seeking leave to file a corrected Declaration regarding Winston's fees and expenses. (Doc. 484). The amended charts describing Winston's fees and costs were filed on October 25, 2024. (Doc. 485 at pp. 4-51). Defendant filed a Response to Plaintiff's Amended Motion for an Award of Attorneys' Fees and Costs on October 31, 2024. (Doc. 487). Plaintiff filed a Reply on November 8, 2024. (Doc. 492).

On November 19, 2024, Plaintiff filed a Supplemental Memorandum of Law in Support of His Amended Motion for an Award of Attorneys' Fees and Costs requesting attorneys' fees for preparing a response to Defendant's Motion to Vacate Judgment and for New Trial and additional hotel expenses incurred during the trial. (Doc. 494). Defendant filed a Response on November 25, 2024. (Doc. 495). Plaintiff filed a Surreply Memorandum on December 3, 2024. (Doc. 497).

In total, Plaintiff asks the Court to award the following amounts: (1) $442,645.95 in attorneys' fees[2] to Winston, (2) $89,941.19 in expenses to Winston, and (3) $21,140 in

---

[2] Winston seeks $442,645.95 if the Laffey Matrix rates are used and $360,639.60 if Plaintiff's alternative rates are used. (Doc. 494 at p. 5).

attorneys' fees to Thomas J. Frederick d/b/a The Law Offices of Thomas J. Frederick. (Doc. 476 at p. 1; Doc. 485 at p. 2; Doc. 494 at p. 5). This Order now follows.

## ANALYSIS

### I.   Defendant's Motion to Vacate Judgment and for New Trial

Defendant argues (1) the jury was not properly instructed on the requirement to find an intentional violation of Plaintiff's rights under the ADA and RA; (2) the jury was improperly influenced by Plaintiff's expert's inadmissible legal opinions regarding the alleged ADA and RA violations; (3) the Court erred by not conducting a *Pavey* hearing to resolve factual disputes regarding the exhaustion of Plaintiff's administrative remedies; and (4) the Court should grant Defendant leave to amend its answer to include a defense of setoff regarding the settlement Plaintiff received from Defendant Hansen. (Doc. 477). Alternatively, Defendant asserts the Court should order a new trial to determine the *pro rata* share of liability as to the steroid shots issue between Defendant Hansen and the IDOC to properly calculate a remittitur.

In his Response, Plaintiff asserts that (1) the Court correctly instructed the jury on the law governing his claims under the ADA and RA; (2) the Court properly allowed his expert's testimony concerning the IDOC's failure to provide reasonable accommodations for his disability; (3) a *Pavey* hearing was not required; and (4) the Court is not required to give Defendant leave to amend its answer to assert a defense of setoff or allow limited discovery on his settlement agreement with Defendant Hansen. (Doc. 482).

### A.  Legal Standard

Under Federal Rule of Civil Procedure 59(a), a court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). When considering a motion for a new trial, "the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of witnesses and the comparative strength of the facts put forth at trial." *Meija v. Cook Cnty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011).

### B.  Jury Instruction

Defendant argues a new trial is warranted because the jury was not properly instructed that it had to find the IDOC acted with intentional discrimination or deliberate indifference. (Doc. 477 at pp. 5-12). Specifically, Defendant argues the Court erred by refusing the IDOC's Proposed Final Instruction No. 9 (Doc. 431-1 at p. 21) and its Proposed Verdict Form (*id.* at pp. 24-26). Plaintiff argues the Court properly instructed the jury because the Court gave the jury the Seventh Circuit Pattern Jury Instructions governing his ADA and RA claims, with minor modifications consistent with the Seventh Circuit's holding in *Lacy v. Cook Cnty.*, 897 F.3d 847, 862-83 (7th Cir. 2018). (Doc. 482 at pp. 5-8).

"A new trial is appropriate if the jury's verdict is 'against the manifest weight of the evidence or if the trial was in some way unfair to the moving party.'" *Lewis v. McLean*,

5

941 F.3d 886, 891 (7th Cir. 2019) (quoting *Martinez v. Chicago*, 900 F.3d 838, 844 (7th Cir. 2018)). "To win a new trial based on an erroneous jury instruction, the [moving party] must show both that the instructions did not adequately state the law and that the error was prejudicial to them because the jury was likely to be confused or misled." *Boyd v. Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004) (citing *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000)). "[E]ven if the jury instruction was patently incorrect, [the moving party] still must establish that it was prejudiced by the improper instruction." *Id.* A jury instruction is prejudicial when "considering the instructions as a whole, along with all of the evidence and arguments, the jury was misinformed about the applicable law." *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001).

The Court's instruction required the jury to analyze whether Plaintiff proved the following elements by a preponderance of the evidence:

1. Plaintiff had a disability. IDOC concedes that Mr. Holman has proved he has a disability, and you need not consider this element;

2. Plaintiff was qualified to participate in and receive the benefit of the program, service, or activity of IDOC at issue in this case, with or without a reasonable accommodation;

3. Plaintiff requested an accommodation;

4. The Illinois Department of Corrections was aware of Plaintiff's disability at the time of Plaintiff's request;

5. The Illinois Department of Corrections failed to provide Plaintiff with a reasonable accommodation.

(Doc. 432 at p. 26; Doc. 477-4 at 802:17-803:5). The consideration of these elements necessarily required a finding that IDOC had acted with deliberate indifference, which

"occurs when 'the defendant *knew* that harm to a federally protected right was substantially likely and … *failed* to act on that likelihood.'" *Lacy*, 897 F.3d at 862 (quoting *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012) (alteration and emphasis in original)). Thus, the Court's jury instruction was consistent with *Lacy*. (Doc. 431-1 at pp. 15-16). The Court finds that it did not abuse its discretion by giving this instruction. *See, e.g., Aldridge v. Forest River, Inc.*, 635 F.3d 870, 876 (7th Cir. 2011) (applying abuse-of-discretion standard to jury instructions).

Even if the Court erred by not giving an instruction on deliberate indifference, Defendant was not prejudiced. The evidence presented at trial was sufficient for a reasonable jury to find that Defendant knew a harm to a federally protected right was substantially likely and that Defendant failed to act upon that likelihood. The jury was presented with a plethora of evidence that Plaintiff was disabled and requested ADA accommodations from the IDOC for years. The evidence also showed Defendant was aware of and ignored Plaintiff's requests for ADA accommodations because the jury found that Defendant failed to act by providing him with a reasonable accommodation. *See Lacy*, 897 F.3d at 863. The Court's instruction was formulated to encompass each of the findings required to establish deliberate indifference. *Id.* Therefore, Defendant was not prejudiced by the instruction because the jury was not likely confused or misled. *See Boyd*, 384 F.3d at 894 (citing *Gile*, 213 F.3d at 375).

### C. Expert Testimony

Defendant argues a new trial is warranted because Plaintiff's expert witness, Elizabeth Stanosheck, was allowed to offer improper "legal opinions" regarding the

IDOC's failure to comply with ADA standards. (Doc. 477 at pp. 13-16). Plaintiff asserts Ms. Stanosheck's testimony was properly admitted. (Doc. 482 at pp. 8-14).

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702(a) permits a witness qualified as an expert to testify regarding his or her opinion if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). "Expert testimony is admissible at trial under Federal Rule of Evidence 702 if the testimony is relevant to a fact in issue, is based on sufficient facts or data, and is the product of reliable scientific or other expert methods that are properly applied." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013). "It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence. As a general rule, accordingly, an expert may not offer legal opinions." *Jimenez v. City of Chi.*, 732 F.3d 710, 721 (7th Cir. 2013). "The jury must still be allowed to play its essential role as the arbiter of the weight and credibility of expert testimony." *Stollings*, 725 F.3d at 765.

If an evidentiary ruling was erroneous, the Court must consider if the ruling had a "substantial influence over the jury, and the result reached was inconsistent with substantial justice." *Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 564 (7th Cir. 2006) (citation omitted); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 725 (7th Cir. 1999). "Evidentiary errors satisfy this standard only when a significant chance exists that they affected the

outcome of the trial." *E.E.O.C. v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012) (quoting *Old Republic Ins. Co. v. Emps. Reinsurance Corp.*, 144 F.3d 1077, 1082 (7th Cir. 1998)).

Here, Defendant does not dispute that Ms. Stanosheck was qualified to offer expert testimony regarding ADA standards in correctional institutions. As such, the Court will focus its analysis on whether Ms. Stanosheck was allowed to offer improper "legal opinions" regarding the IDOC's failure to comply with ADA standards in Plaintiff's case.

Defendant argues it was erroneous for the Court to allow Ms. Stanosheck to testify about topics within the unique purview of the jury, such as what "IDOC should do to implement the ADA" (Doc. 477-2 at 466:10-15), whether "IDOC has enacted sufficient processes and positions in order to implement the ADA" (*id.* at 475:21-476:2), and "whether IDOC has failed to reasonably accommodate [Plaintiff] as required by the ADA and the Rehabilitation Act" (*id.* at 481:4-12). (Doc. 477 at p. 13).

Defendant asserts that "Plaintiff's expert's inappropriate influence on the jury was inadvertently reinforced" by the Court. *Id.* at p. 15. During trial, Plaintiff's counsel asked Ms. Stanosheck: "And are you familiar from your work as an ADA…consultant what state department of corrections like IDOC should do to implement the ADA?" (Doc. 477-2 at 466:10-467:2). In response to Defendant's objection that the question called for a legal conclusion, the Court stated: "Well, she's here testifying as an expert on requirements for ADA in correctional facilities. So however the question is asked, she may answer in that regard." *Id.* at 466:21-23.

Ms. Stanosheck testified about conducting an extensive investigation of the evidence regarding Plaintiff's disability, the conditions at Pontiac, and the ADA requirements upon which her opinions were based. *Id.* at 425:15-20, 458:23-462:1, 463:10-464:24, 489:23-490:23. The Court finds there was no error in allowing Ms. Stanosheck to opine on these issues. "[T]here is a difference between opining on a legal issue and simply relying on legal standards to produce a proper, admissible expert opinion." *Bos. Sci. Corp. v. Cook Med. LLC*, No. 117CV03448JRSMJD, 2023 WL 1476573, at *5 (S.D. Ind. Feb. 2, 2023); *see also Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2014 WL 1257943, at *2 (N.D. Ill. Mar. 27, 2014) ("In the course of offering his opinions on commercial success, [the expert] references the legal standard upon which he bases his economic analysis and opinions."); *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 882 (N.D. Cal. 2015) ("an expert may refer to the law in expressing an opinion without crossing the line into a legal conclusion"). If Ms. Stanosheck had not been permitted to refer to the applicable ADA standards in offering her opinions, her expert testimony would not have "help[ed] the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). As the Court observed during trial: "As long as these answers are framed in…Ms. Stanosheck's belief of what the ADA requirements are, then these are not legal conclusions. These are her opinions." (Doc. 477-3 at 522:9-13).

During trial, Defendant did not object to other opinions Ms. Stanosheck offered, including her opinions regarding the IDOC's failure to transfer Plaintiff to an ADA-accessible facility (Doc. 477-2 at 485:20-486:7), the IDOC's failure to respond to Plaintiff's request for an accommodation under the ADA with respect to his shower (Doc. 477-3 at

533:2-15), the IDOC's response to Plaintiff's request for transfer to an ADA-accessible facility (*id.* at 533:16-534:14), the IDOC's grievance response denying his request for a transfer (*id.* at 534:15-535:23), the IDOC's response to Plaintiff's grievance regarding his prescribed steroid shots (*id.* at 545:18-546:18), the IDOC's deference to medical professionals in responding to Plaintiff's medical grievances (*id.* at 546:20-547:18), whether it was Plaintiff's responsibility to cancel his medical appointments so he could be transferred to an ADA-accessible facility (*id.* at 547:19-550:9), and whether it was appropriate for Ginger Davis, the IDOC employee who was the head of the Health Care Unit at Pontiac, to tell Plaintiff to stop writing to her (*id.* at 550:13-551:17). "If a party does not object to testimony during the testimony itself, the objection is waived and cannot be raised for the first time in a motion for a new trial or on appeal." *Hargis v. Wellspeak Enterprises, Inc.*, No. 1:08-CV-00339-RLY, 2012 WL 3144962, at *5 (S.D. Ind. Aug. 1, 2012) (citing *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 609-10 (7th Cir. 2006)).

Finally, even if Ms. Stanosheck's "legal conclusions" were admitted erroneously, the Court finds that the error was harmless. "An evidentiary error warrants a new trial 'only if the error affects a substantial right of the party.'" *Barber v. City of Chi.*, 725 F.3d 702, 715 (7th Cir. 2013) (quoting FED. R. EVID. 103(a)). "To make this determination, we examine the error in light of the entire record, and a new trial will be granted only if we are unable to say with fair assurance that the error did not substantially sway the jury." *Id.* at 715. Here, there was ample evidence to support the jury's verdict against Defendant. In addition, Defendant had the opportunity to cross-examine Ms. Stanosheck regarding her opinions. (Doc. 477-3 at 552:2-581:6). *See, e.g., United States v. Tinsley*, 62 F.4th 376, 385

(7th Cir. 2023) (opportunity for cross-examination helps render harmless any error in admitting expert testimony); *United States v. Ochoa-Zarate*, 540 F.3d 613, 622 (7th Cir. 2008) (same). Defendant has failed to show that any alleged error in admitting Ms. Stanosheck's expert testimony substantially swayed the jury.

### D. *Pavey* Hearing

Defendant argues the judgment should be vacated under Federal Rule of Civil Procedure 59(e) because the Court failed to hold an evidentiary hearing under *Pavey v. Conley*, 544 F.3d 799 (7th Cir. 2008), on the exhaustion of administrative remedies. (Doc. 477 at pp. 16-19). Plaintiff argues a *Pavey* hearing was not required, and Defendant's request is improper under Rule 59(e). (Doc. 482 at pp. 14-18).

A motion under Rule 59(e) "can be granted only where the movant clearly establishes: '(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" *Barrington Music Prods. v. Music & Arts Ctr.*, 924 F.3d 966, 967 (7th Cir. 2019) (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013)). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Cincinnati Life Ins. Co.*, 722 F.3d at 954 (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (internal citation and quotation marks omitted)).

On March 7, 2019, Defendant IDOC filed a Motion for Summary Judgment under 42 U.S.C. § 1997e(a) arguing that Plaintiff failed to exhaust his administrative remedies

because he did not complete the grievance process. (Doc. 43). Specifically, Defendant asserted that, although Plaintiff filed a grievance and appealed to the Administrative Review Board ("ARB"), he did not provide the additional documentation the ARB requested, including the grievance officer's recommendation and the warden's decision. In a declaration accompanying his response, Plaintiff stated he had no specific recollection of what he did in response to the ARB's decision, but his "standard practice has been promptly to complete any required grievance documents and place them on the bars of [his] cell for an officer to pick up and deposit in the grievance box for [him]." (Doc. 49-1 at ¶ 5). Defendant filed a reply asserting that there were evidentiary issues with Plaintiff's declaration. (Doc. 60). Defendant did not request a *Pavey* hearing.

On March 21, 2019, Plaintiff filed a motion for a *Pavey* hearing. (Docs. 46 and 47). Defendant filed a response asking the Court to deny Plaintiff's request for a *Pavey* hearing because "[t]here would be no sufficient reason in conducting a *Pavey* Hearing, because the Plaintiff has no specific memory about what he did." (Doc. 61 at p. 5).

On May 17, 2019, Judge Harold A. Baker denied Defendant's Motion for Summary Judgment and Plaintiff's request for a *Pavey* hearing. (Doc. 67). The Court stated:

> Despite Defendant's argument to the contrary, Plaintiff's statement regarding his standard practice is admissible to show that he acted in conformity therewith on a specific occasion; corroboration is not required. *See* Fed. R. Evid. 406. Defendants have not provided any evidence to refute Plaintiff's statement regarding his standard practice.
>
> …
>
> Without some proof of a chain of evidence as it relates to institutional mail, Defendant cannot refute Plaintiff's contention that he sent the grievance in accordance with his standard practice. Once placed in the hands of prison

13

> officials, Plaintiff had no control over what happened next, and, therefore, any failure to exhaust cannot be attributed to any action on his part. At that point, the process became unavailable to Plaintiff.

*Id.* at pp. 6-7.

Notably, Defendant did not request a *Pavey* hearing in its summary judgment motion, nor did Defendant request a *Pavey* hearing after its motion was denied. *See Lewis v. Calvert*, No. 3:23-CV-57-DRL-MGG, 2024 WL 3844993, at *2 (N.D. Ind. Aug. 15, 2024) (court will not schedule a *Pavey* hearing "unless one of the defendants file a motion requesting it"); *see Moore v. Qualls*, No. 21-CV-01454-SPM, 2024 WL 3673146, at *4 (S.D. Ill. Aug. 6, 2024) (requiring defendant to request a *Pavey* hearing within fourteen days after defendant's summary judgment for failure to exhaust administrative remedies was denied).

More than five years later, Defendant now asserts for the first time that the Court erred by not conducting a *Pavey* hearing. Defendant's request is untimely and improper. Defendant cannot base a Rule 59(e) motion on the Court's purported failure to grant the Plaintiff's motion for a *Pavey* hearing, which was rendered moot by the denial of Defendant's summary judgment motion. (Doc. 67). Additionally, the cases Defendant cites—*Smallwood v. Williams*, 59 F.4th 306, 318 (7th Cir. 2023), and *Gaines v. Prentice,* No. 21-1588, 2022 WL 2304227, at *2 (7th Cir. June 27, 2022)—do not support overturning a jury verdict after the Defendant waited over five years to request a *Pavey* hearing, as *Smallwood* and *Gaines* did not involve post-trial or Rule 59(e) motions.

Even if Defendant had made a timely request for a *Pavey* hearing, the Court was not obligated to conduct one. "A court normally holds a <u>Pavey</u> hearing to resolve factual

14

disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence." *Jackson v. Hyatte*, No. 3:22-CV-1 RLM-MGG, 2023 WL 5223924, at *9 (N.D. Ind. Aug. 15, 2023) (citing *Bessler v. Wexford of Ind. LLC*, No. 3:21-CV-691, 2022 WL 16636258, at *3 (N.D. Ind. Nov. 2, 2022)). Judge Baker resolved the issue of exhaustion based on the evidence in the record, without the need for a *Pavey* hearing. (Doc. 67). Defendant's request to vacate the judgment and order a *Pavey* hearing is denied.

### E. Leave to Amend Answer and Conduct Discovery Regarding Settlement

Next, Defendant argues the Court should grant leave to amend its answer to include a defense of setoff and permit limited discovery about Plaintiff's settlement with Defendant Hansen. (Doc. 477 at pp. 19-24). Defendant asserts Plaintiff may have received a "double recovery" from the jury's verdict on his ADA and RA claims against the IDOC and his settlement with Defendant Hansen on his Eighth Amendment deliberate indifference claim. Defendant contends that the jury's $150,000 verdict should be reduced by the full amount of Plaintiff's settlement with Defendant Hansen. Alternatively, Defendant argues that a new trial should be ordered to determine the *pro rata* share of liability as to the steroid shots issue between Defendants Hansen and IDOC to properly calculate a remittitur.

Plaintiff argues the injuries he suffered from the IDOC's violation of his statutory rights under the ADA and RA and Defendant Hansen's violation of his constitutional rights under section 1983 are legally and factually distinct. (Doc. 482 at p. 18). Plaintiff asserts that there is no "joint and several liability" for the jury's award of $150,000 in

compensatory damages on his ADA and RA claims, which focused on the IDOC's failure to provide ADA accommodations at Pontiac and its refusal to transfer him to an ADA-accessible facility.

Plaintiff also asserts Defendant failed to meet its burden of demonstrating that it is entitled to a setoff. *Id.* at p. 20. Plaintiff argues he presented evidence to the jury supporting six separate and independent theories of liability, any of which could have supported the jury's verdict. Only one theory of liability—IDOC's failure to ensure that Plaintiff had access to medically prescribed steroid shots to relieve his severe back, left-leg, and neck pain and improve his mobility—had an evidentiary overlap with Plaintiff's section 1983 claim against Defendant Hansen.

"A motion under Rule 59(e) to alter or amend the judgment is an appropriate vehicle to request a setoff of a jury verdict." *Zivitz v. Greenberg*, 279 F.3d 536, 539 (7th Cir. 2002). "[A] setoff is a procedural device for adjusting a verdict to avoid a windfall to the plaintiff." *Fox ex rel. Fox v. Barnes*, No. 09 C 5453, 2013 WL 2111816, at *3 (N.D. Ill. May 15, 2013) (citing Martin A. Schwartz, Section 1983 Litigation Claims and Defenses § 16.15 (rev. 2013)). Section 1983 is silent on when a setoff for a prior settlement against a joint and several tortfeasor is appropriate. Thus, courts situated within Illinois should consider Illinois law on the question. *Fox*, 2013 WL 2111816, at *4 (citing *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985)). "The most closely analogous Illinois law is the Joint Tortfeasor Contribution Act, 740 ILCS 100/2(c), which provides that:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death . . . it reduces the recovery on any claim

16

against [any] other [tortfeasors] to the extent of any amount stated in the
release or the covenant, or in the amount of the consideration actually paid
for it, whichever is greater.

*Fox*, 2013 WL 2111816, at *4 (quoting 740 ILCS 100/2(c)). "Nonsettling tortfeasors,

however, are entitled to a setoff only for damages that are awarded for the same injury

for which the settling defendants compensated the plaintiff." *Zivitz*, 279 F.3d at 539

(citations omitted). The defendant bears the burden of demonstrating it is entitled to a

setoff. *Id.* at 540 (citations omitted). !

Here, the jury could have easily inferred that Defendant IDOC was liable for ADA

and RA violations arising from its own actions, separate and apart from Defendant

Hansen, who Plaintiff alleged "expressly denied or ignored [his] complaints about his

increasingly severe back pain and his requests to go to the UIC Pain Clinic to receive

another steroid injection." (Doc. 232 at ¶ 54). At trial, Plaintiff presented evidence that

Defendant IDOC failed to provide him with an ADA-accessible cell at Pontiac. (Doc. 477-

1 at 71:6-97:15; Doc. 477-2 at 329:6-10, 329:19-24, 485:20-486:7; Doc. 477-3 at 513:11-525:9;

Doc. 477-4 at 819:8-820:4; Pl.'s Exs. 439-447, 455-456, 728). Second, Plaintiff presented

ample evidence that Defendant IDOC failed to provide him access to an ADA-accessible

shower at Pontiac. (Doc. 477-1 at 97:16-117:13, 129:23-147:12, 162:3-163:8, 164:24-165:11;

Doc. 477-2 at 329:11-18, 329:25-330:5, 485:20-486:7; Doc. 477-3 at 525:10-534:14; Doc. 477-4

at 820:5-821:12; Pl.'s Exs. 448-454, 728, 736, 737). Third, Defendant IDOC required Plaintiff

to climb up and down stairs at Pontiac to receive medical care. (Doc. 477-1 at 117:15-

129:17, 129:23-147:19; Doc. 477-3 at 538:24-541:15; Doc. 477-4 at 821:13-822:12; Pl.'s Exs.

457-462, 728, 736). Fourth, Defendant IDOC did not allow Plaintiff to take daily walks

that had been medically prescribed for him. (Doc. 477-1 at 206:4-228:24; Doc. 477-2 at 319:23-323:22; Doc. 477-3 at 541:16-542:18; Doc. 477-4 at 822:13-823:8; Pl.'s Exs. 437, 438, 447, 455, 456, 669, 671, 721). Fifth, Defendant IDOC failed to transfer Plaintiff to an ADA-accessible correctional facility. (Doc. 477-1 at 129:21-170:16, 175:2-190:20, 192:7-23, 199:3-206:3; Doc. 477-2 at 330:6-10, 330:21-331:6, 485:20-486:7; Doc. 477-3 at 533:16-538:23, 547:19-551:17; Doc. 477-4 at 823:9-825:19; Pl.'s Ex. 1003 at 4:9-4:12, 5:13-5:16, 64:9-64:18, 66:6-68:9; Plaintiff's Exs. 655, 656, 728, 736, 737). Sixth, Defendant IDOC failed to ensure that Plaintiff had access to medically prescribed steroid shots to relieve his severe back, left leg, and neck pain and improve his mobility. (Doc. 477-1 at 228:25-265:20; Doc. 477-2 at 296:19-312:5, 319:23-325:18, 327:8-328:3, 328:24-329:5; Doc. 477-3 at 542:19-547:18; Doc. 477-4 at 825:22- 830:22; Pl.'s Exs. 124, 309, 486, 653, 669, 671, 696, 698). The IDOC's violations of the ADA and RA led to a separate and distinct harm to Plaintiff, and the jury could have punished Defendant IDOC solely for its statutory violations, not for the actions of Defendant Hansen.

Moreover, the Court instructed the jury to consider whether Plaintiff was injured because of Defendant IDOC's conduct. (Doc. 432 at pp. 26, 29, 33). Medical care is included among the services, programs, or activities the IDOC is required to provide to inmates under the ADA and RA. As the jury instructions stated: "The IDOC cannot delegate or assign its responsibility under the ADA and Rehabilitation Act to others which IDOC has contracted to provide medical care to persons in custody." *Id.* at p. 28. The Court acknowledges some unavoidable overlap of the evidence regarding the steroid injections occurred, but the overwhelming evidence of the IDOC's ADA and RA

violations supports the jury's verdict and weighs against a setoff. Defendant's Motion to Vacate Judgment and for a New Trial is DENIED.

## II.    Plaintiff's Amended Motion for an Award of Attorneys' Fees and Costs

In his Amended Motion for an Award of Attorneys' Fees and Costs, Plaintiff asks the Court to award (1) $422,650.25 in fees to Winston, (2) $82,385.48 in costs to Winston, and (3) $21,140 in attorney's fees to Thomas J. Frederick, d/b/a The Law Offices of Thomas J. Frederick. (Doc. 476 at p. 1; Doc. 485 at p. 2).   In his Supplemental Memorandum, Plaintiff seeks (1) an additional fee award of $19,995.70 for preparing his response to the IDOC's Motion to Vacate Judgment and for New Trial, and (2) additional costs of $9,056.65 for lodging, trial site workroom rental, and other hotel expenses incurred during trial. (Doc. 494 at p. 1).

In its Response, Defendant IDOC argues the requested fees and expenses are excessive and inconsistent with the limited scope of Plaintiff's success in this case. (Doc. 487). Defendant urges the Court to (1) reduce Plaintiff's fees to reflect only the work relevant to the RA claim, (2) align the hourly rates and expenses with the Criminal Justice Act rate of $172 per hour, and (3) reduce Plaintiff's requests in a proportionate and reasonable manner—specifically, to adjust the entire award in proportion to Plaintiff's success at trial, where he obtained 27% ($150,000) of the $552,000 he sought from the jury. Accordingly, Defendant argues the Court should only award $130,720 for attorneys' fees and $16,944.27 for transcripts and reasonable printing costs. *Id.* at p. 20.

## A. Legal Standard

Congress has authorized the award of reasonable attorneys' fees to prevailing parties in civil rights cases, including successful claims under the ADA and RA. *See* 42 U.S.C. §§ 1988(b), 12205; 29 U.S.C. § 794a(b). "A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

The threshold question for fee shifting in a civil rights case is whether the plaintiff has attained "prevailing party" status. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiffs prevail under the law if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit," including when the results achieved materially alter the relationship between the parties. *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (citing *Hensley*, 461 U.S. at 433).

After the plaintiff is determined to be the prevailing party, the court must determine the appropriate fees. Courts typically use the "lodestar method," which is "the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). While the court may then adjust the fee upwards or downwards in certain circumstances, the strong presumption is that the lodestar method yields the appropriate fee under the law. *Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."); *Perdue*, 559 U.S. at 552-53 ("[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective. … Indeed, we have said that the presumption is a 'strong' one.") (internal citations omitted). It is the fee applicant's

burden to establish his or her entitlement to an award. *Hensley*, 461 U.S. at 437. Ultimately, the amount of a fee award is an "equitable judgment" committed to the sound discretion of the district court. *Id.*

### B. Plaintiff is the Prevailing Party on his ADA and RA Claims.

In his Fourth Amended Complaint, Plaintiff alleged the IDOC violated the ADA, 42 U.S.C. § 12132, *et seq.*, and the RA, 29 U.S.C. § 794, *et seq.* Following a jury trial, a judgment was entered in Plaintiff's favor on his ADA and RA claims against Defendant IDOC, and Plaintiff was awarded $150,000 in compensatory damages. Plaintiff is a "prevailing party" within the meaning of section 1988(b) and may recover reasonable attorneys' fees. *See Hensley*, 461 U.S. at 433; *Johnson v. Daley*, 339 F.3d 582, 587 (7th Cir. 2003).

Defendant concedes that Plaintiff may recover attorneys' fees under the RA but asserts that recovery of fees and costs under the ADA is barred because "the jury did not find an independent constitutional violation, nor did it find an act of intentional discrimination." (Doc. 487 at p. 4). Defendant argues the relief available under the ADA is injunctive only, unless Plaintiff proved an independent constitutional violation, while the relief available under the RA can be injunctive and compensatory. Defendant argues that because Plaintiff prevailed only in recovering compensatory damages at trial, the RA's fee-shifting statute controls. It states that "the court, in its discretion, may allow the prevailing party…a reasonable attorney's fee as part of the costs." § 794a(b). Defendant asserts this differs significantly from the ADA, which allows "litigation expenses" to the

prevailing party of that claim. § 12205; *see also* § 1988 (allowing "expert fees as part of the attorney's fee").

In his Reply, Plaintiff argues he is entitled to recover attorneys' fees and costs under the ADA as well as the RA because he was a prevailing party under both statutes. (Doc. 492).

As stated above, the jury was properly instructed on the issue of deliberate indifference and awarded Plaintiff compensatory damages on his ADA and RA claims. Plaintiff is therefore the prevailing party on his claims under both statutes and is entitled to recover attorneys' fees and costs.

### C. Reasonable Hourly Rate

The parties agree that the lodestar method—which "multiplies the attorney's reasonable hourly rate by the hours reasonably expended"—is the starting point for determining the amount of fees to award. (Doc. 487 at p. 5) (citing *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 682 (7th Cir. 2022)). However, they disagree on what other factors the Court should consider in exercising its discretion and the appropriate hourly rates.

To calculate the amount of reasonable fees incurred, the Court must first determine the reasonableness of the hourly rates sought by Plaintiff's counsel. A reasonable hourly rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999). It is presumed that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. *Denius v.*

*Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003). The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). If this burden is satisfied, it shifts to the other party to offer evidence that sets forth "good reason" why a lower rate should be awarded. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996) (internal quotation marks and citations omitted). If the party seeking fees fails to carry its burden, the Court may properly "make its own determination of a reasonable rate." *Pickett*, 664 F.3d at 640 (citation omitted). The Seventh Circuit has instructed that "just because the proffered rate is higher than the local rate does not mean that a district court may freely adjust that rate downward." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003).

Plaintiff's Motion seeks recovery of fees for work performed by five attorneys—Thomas Frederick, Johanna Hudgens, Sarah Bily, Jose Contreras, and Leigh Frederick—and two staff members—Rudy Radic and Ken Berry. Plaintiff argues he should be awarded the full lodestar because the fees are supported by his attorneys' qualifications and experience, prior rates, and the successful prosecution of Plaintiff's ADA and RA claims. Plaintiff also suggests that the Court should employ the Laffey Matrix[3] to determine the hourly rate. Plaintiff provided a detailed chart of his attorneys' billing

---

[3] The Laffey Matrix derives from the hourly rates allowed by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), and is updated yearly.

entries (Doc. 485 at pp. 3-26) and supporting Declarations from Mr. Frederick and Ms. Hudgens (Doc. 476 at pp. 16-28; Doc. 485 at pp. 1-2).[4]

### 1. Partners

#### a. Thomas Frederick

Thomas Frederick was recruited by the Court as Plaintiff's pro bono counsel in 2018. Mr. Frederick is a 1984 graduate of the University of Michigan Law School, the Articles Editor on the *Michigan Law Review*, and a member of the Order of the Coif. Mr. Frederick was an attorney at Winston from 1984 until his retirement on January 31, 2022, except for a brief absence to teach at the University of Chicago Law School. During his 37-year tenure at Winston, Mr. Frederick was Chair of the Litigation Department and managing partner of the Chicago office. Mr. Frederick has extensive litigation and trial experience in complex civil and criminal cases, as well as experience litigating pro bono cases and cases against state and other governmental entities. (Doc. 492 at pp. 22-25). Mr. Frederick's billable rates were $1,220 per hour in 2019, $1,280 in 2020, $1,345 in 2021, and $1,445 in 2022. (Doc. 476 at pp. 16-19).

#### b. Johanna Hudgens

Johanna Hudgens, a partner at Winston's New York office, acted as co-lead counsel at the trial of Plaintiff's ADA and RA claims against Defendant IDOC. Ms. Hudgens graduated from Columbia Law School in 2014, where she was the Managing

---

[4] Plaintiff filed an Agreed Motion for Leave to File Second Declaration of Johanna Rae Hudgens (Doc. 484) to correct the amounts of fees and expenses Winston seeks to recover after arithmetical errors were identified on the charts included in the exhibits accompanying Ms. Hudgens' original declaration (Doc. 476 at pp. 29-77). The Court granted the motion and docketed Ms. Hudgens' second declaration and the revised charts of the fees (Doc. 485 at pp. 3-26) and expenses (*Id.* at pp. 27-51).

Editor of the *Columbia Human Rights Law Review*. After law school, she was admitted to the bar in the State of New York in 2015 and clerked for the Honorable Brian M. Cogan in the Eastern District of New York. Ms. Hudgens joined Winston as an associate attorney in 2016 and became a partner in the Litigation Department in 2023. Ms. Hudgens' billable rate was $1,120 per hour in 2023 and $1,265 in 2024. *Id.* at pp. 21-28.

### 2. Associates

#### a. Sarah Bily

Sarah Bily, a former associate at Winston's Chicago office, was primarily responsible for legal research, discovery, and expert witness preparation for Plaintiff's ADA and RA claims. Ms. Bily graduated from the University of Virginia Law School in 2015, where she was a member of the *Virginia Law Review*. Ms. Bily left Winston in April 2024 to become an Ethics Advisor at Fannie Mae. Ms. Bily's billable rates were $660 per hour in 2019, $760 in 2020, $850 in 2021, $985 in 2022, $1,110 in 2023, and $1,240 in 2024. *Id.* at pp. 23-24, ¶ 7(c).

#### b. Jose Contreras

Jose Contreras, an associate at Winston's New York office, participated in the trial preparation and trial of Plaintiff's ADA and RA claims and read from a deposition transcript at trial. Mr. Contreras joined Winston after graduating from Harvard Law School in 2022. While at Harvard, Mr. Contreras was an American Association for Justice Trial Advocacy Regional Champion and a Martin Luther King Jr. National Civil Rights Trial Competition Finalist. Mr. Contreras' billable rates were $695 per hour in 2023 and $835 hour in 2024. *Id.* at p. 24, ¶ 7(d).

25

### c. Leigh Frederick

Leigh Frederick, an associate at Winston's Chicago office, participated in the trial of Plaintiff's ADA and RA claims and read a deposition transcript at trial. Ms. Frederick joined Winston after receiving her J.D. degree from Loyola University Chicago School of Law in 2022. While at Loyola, Ms. Frederick was a member of the school's national moot court team and served on the moot court board. Ms. Frederick's billable rate was $400 per hour in 2024 before her promotion to associate attorney. *Id.* at ¶ 7(e).

### 3. Support Staff

### a. Rudy Radic

Mr. Radic, a trial technician in Winston's Houston office, participated in the trial of Plaintiff's ADA and RA claims and displayed exhibits in the courtroom. Mr. Radic's billable rate is $210 per hour. *Id.* at ¶ 7(f).

### b. Ken Berry

Mr. Berry is a paralegal at Winston's Chicago office and serves as the firm's Corporate Social Responsibility & Pro Bono Administrator. Mr. Berry facilitates the firm's prisoner civil rights practice and provides paralegal functions to several teams representing incarcerated individuals. Mr. Berry participated in the trial of Plaintiff's ADA and RA claims by assisting the trial team with exhibits and other tasks. As a member of the pro bono department, Mr. Berry did not record his billable hours. Therefore, Winston only requests his trial-related expenses. *Id.* at p. 25, ¶ 7(g).

26

### 4. Plaintiff's Attorneys' Reasonable Hourly Rates

Defendant asserts the attorneys' fees should be reduced because Plaintiff has not satisfied his burden of establishing the appropriate market rate. Defendant contends that the relevant market rate is not what private sector attorneys at firms in Chicago or New York would charge, but instead, what similar attorneys in Peoria, Illinois would charge for litigating ADA and RA claims in the non-profit sector. Defendant also criticizes Plaintiff's reliance on the Laffey Matrix and asserts that it lacks relevance to this jurisdiction. Defendant contends that the hourly rate should be reduced to the Criminal Justice Act ("CJA") rate of $172 per hour. Using the CJA rate, Defendant asserts Plaintiff's requested fees should be reduced to $130,720.

The Court notes that Plaintiff's attorneys should be fairly compensated for their work, especially considering the hours expended, their level of experience, and the results obtained. The CJA is irrelevant under the lodestar method, which requires the use of hourly rates that are in line with those prevailing in the community for similar services. The CJA rate is lower than the local market rate and would not fairly compensate Plaintiff's attorneys for their considerable work on this case.

That being said, the Court cannot adopt the rates Plaintiff's counsel has submitted. Rather than providing evidence of what his attorneys charged or were awarded in similar prisoners' rights cases, Plaintiff's evidence focuses on what his attorneys charge for their legal services in private practice in Chicago and New York. Plaintiff proposes that the Court should use the Laffey Matrix to establish their hourly rates, but the Laffey Matrix is not particularly helpful for determining the prevailing market rate for attorneys in

central Illinois. *See Pickett*, 664 F.3d at 649-50 (noting that although courts outside the District of Columbia have applied the Laffey Matrix, only the D.C. Circuit has formally adopted it while other courts "have viewed it with differing levels of praise and skepticism" and expressed concerns about its utility in other geographic areas). The Seventh Circuit has "left it to trial judges to exercise their discretion in evaluating [the Laffey Matrix's] usefulness in any particular case." *Montanez*, 755 F.3d at 554. The Court declines to use the Laffey Matrix rates, as they are significantly higher than the prevailing market rate in central Illinois.

Alternatively, Plaintiff argues the Court should adopt his proposed alternative rates, which fall between the Laffey Matrix's rates and those used by Judge Jonathan E. Hawley in *Rodesky v. Pfister*, No. 15-CV-1002-JEH, 2023 WL 2585856, at *1 (C.D. Ill. Feb. 21, 2023), *appeal dismissed sub nom. Rodesky v. Jeffreys*, No. 23-1403, 2023 WL 5608424 (7th Cir. Apr. 19, 2023). Plaintiff included the following chart of his proposed rates in his Reply. (Doc. 492 at p. 10).

| Name | Winston Standard Rate | Laffey Matrix Rate | Alternative Rate |
|---|---|---|---|
| Thomas Frederick | $1,220 - $1,445 | $899 - $1,057 | $750 |
| Johanna Hudgens | $1,120 - $1,265 | $777 | $600 |
| Sarah Bily | $660 - $1,240 | $372 - $777 | $500 |
| Jose Contreras | $695 - $835 | $437 | $300 |
| Leigh Frederick | $400 | $437 | $300 |
| Rudy Radic | $210 | N/A | $100 |

Plaintiff's alternative rates are higher than the hourly rates Judge Hawley used in *Rodesky* and the prevailing market rate in central Illinois. *Id.* at *3-6; *see e.g.*, *Jackson v. City of Peoria*, No. 17-cv-1129, 2019 WL 5103806, at *6-8 (C.D. Ill. Oct. 11, 2019) (finding $425 per hour the prevailing market rate and a reasonable hourly rate for attorney with over twenty years of experience who provided affidavits of other local attorneys and prior fee agreements); *Donaldson v. MBR Cent. Ill. Pizza, LLC*, No. 18-cv-3048, 2019 WL 4447969, at *3 (C.D. Ill. Sept. 17, 2019) (noting that plaintiffs' attorneys' rates of $250 to $400 per hour "are in line with the rates that have recently been approved in this District"); *Norton v. City of Springfield*, No. 15-3276, 2018 WL 6601083, at *3 (C.D. Ill. Dec. 17, 2018) (awarding $300 per hour for experienced attorney and $250 per hour for less experienced associate); *Abellan v. HRDS Le Roy IL, LLC*, No. 16-cv-1037, 2018 WL 6247260, at *10 (C.D. Ill. Nov. 29, 2018) (approving fee award where attorneys and paralegals billed rates between $150 and $400 per hour). The Court finds that Plaintiff has failed to carry his burden of establishing an appropriate rate. Thus, the Court may "independently determine" a reasonable rate. *See Montanez*, 755 F.3d at 553 ("[I]f that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases.").

### a. Mr. Frederick's hourly rate is $450 — $650.

Mr. Frederick seeks an hourly rate of between $750 and $1057. His requested hourly rate is higher than what this Court has awarded in similar cases. For instance, in *Norton*, Judge Richard Mills reduced the hourly rate of an attorney with thirty-four years of civil rights experience to $360 per hour in a case involving a violation of plaintiff's First

Amendment rights. 2018 WL 6601083, at *3. In *Barn II, Inc. v. W. Bend Mut. Ins. Co.*, No. 1:17-cv-01184-JEH, 2019 WL 4266520, at *4 (C.D. Ill. Mar. 22, 2019), Judge Hawley set an hourly rate of $350 for an attorney with forty-three years of experience who obtained a jury verdict of $468,000 for a breach of contract claim. In *Rodesky*, Judge Hawley awarded an hourly rate of $450 for Alan Mills, a civil rights attorney with more than forty years of experience, in a lengthy case involving a jury trial of the plaintiff's ADA and RA claims against the IDOC. 2023 WL 2585856, at *5.

Here, the Court finds that $450 is a reasonable hourly rate for the time Mr. Frederick spent on the preliminary injunction proceedings and discovery and that $650 is a reasonable hourly rate for the 20 hours Mr. Frederick requests for representing Plaintiff at the pretrial hearings and trial in 2024. (Doc. 476 at p. 12). The Court recognizes that it is difficult to recruit volunteer attorneys from central Illinois to represent *pro se* litigants. As a result, the Court must often recruit attorneys from large firms outside the region, as it did in this case. Therefore, awarding a higher rate to Mr. Frederick and Ms. Hudgens for representing Plaintiff at the pretrial hearings and trial is appropriate.

### b. Ms. Hudgens' hourly rate is $350 — $450.

Ms. Hudgens, a partner at Winston and co-lead counsel at trial, seeks an hourly rate of $600 or $777, but both rates are more than what other attorneys with similar experience have been awarded in this region. *See Haywood*, 2021 WL 2254968, at *13 (citing *Favela v. Jeffrey Boyd, Rock Island Cnty.*, No. 15-CV-4028-JES-JEH, 2021 WL 808732, at *3 (C.D. Ill. Mar. 3, 2021) (awarding $350 per hour in section 1983 case for attorney with ten years of practice whose rate had not been established in prior cases)); *see also Rodesky*,

2023 WL 2585856, at *5 (awarding $350 per hour for civil rights attorneys with between eleven and twelve years of experience). While the Court finds the previous rulings from *Haywood* and *Rodesky* instructive, increasing the hourly rate for Ms. Hudgens' work during the trial is warranted to fairly compensate Plaintiff's counsel. Therefore, the Court will set Ms. Hudgens' hourly rate at $350 for trial preparation and post-trial matters and $450 for the trial.

### c. Ms. Bily's hourly rate is $325.

Plaintiff requests between $372 and $777 per hour under the Laffey Matrix or an alternative rate of $500 per hour for associate attorney Ms. Bily, who performed a significant amount of work on Plaintiff's ADA and RA claims. This Court will set Ms. Bily's hourly rate at $325. *See Haywood*, 2021 WL 2254968, at *13 (citing *Favela v. Boyd*, Case No. 15-cv-4028-JES-JEH, 2021 WL 808732, at *3 (C.D. Ill. Mar. 3, 2021) (awarding $350 hourly rate in § 1983 litigation for attorney in practice for ten years whose rate had not been established in prior cases); *Rodesky*, 2023 WL 2585856, at *5 (awarding $350 per hour for civil rights attorneys with between eleven and twelve years of experience).

### d. Ms. Frederick's and Mr. Contreras' hourly rate is $200.

Plaintiff requests an hourly rate of between $437 and $835 for Ms. Frederick and Mr. Contreras, who graduated from law school in 2022. (Doc. 476 at p. 10). While their academic backgrounds are impressive, their hourly rates are not in line with the local market, nor the Northern District of Illinois, for attorneys with approximately two years of legal experience. *See Rodesky*, 2023 WL 2585856, at *6 (awarding $200 per hour for recent law school graduates in case involving ADA and RA claims); *Baker v. Ghidotti*, No. 11 C

4197, 2018 WL 1610263, at *2 (N.D. Ill. Apr. 3, 2018) (awarding $230 hourly rate in section 1983 case involving false arrest for attorney recently admitted to the bar). Ms. Frederick's and Mr. Contreras' hourly rate will be reduced to $200 per hour.

### e. Mr. Radic's hourly rate is $40.

Plaintiff requests $100 per hour for his trial technician, Mr. Radic. (Doc. 476 at p. 10). Trial technician time is a compensable cost. *The Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2017 WL 4882379, at *12 (N.D. Ill. Oct. 30, 2017) (citing *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 0242, 2011 WL 5008425, at *7 (N.D. Ill. Oct. 20, 2011)); *see also Marctec, LLC v. Johnson & Johnson*, No. 07CV825DRH, 2010 WL 669818, at *3 (S.D. Ill. Feb. 22, 2010) (providing an effective presentation—including a computer-generated slide show presentation—to aid the fact finder is a reasonable necessity). In the Central District, support staff were awarded an hourly rate of $40 in 2022. *See Billy W. C. v. Kijakazi*, No. 4:21-cv-04003, 2022 WL 1306731, at *3 (C.D. Ill. May 2, 2022). Plaintiff does not indicate that Mr. Radic is a paralegal or provide an affidavit or a resume highlighting any specialized training or experience to justify a higher rate of $100. As a result, the Court finds that $40 per hour is a reasonable rate for Mr. Radic's in-court trial technician duties.

In summary, the Court sets the hourly rates at $450 and $650 for Mr. Frederick, $350 and $450 for Ms. Hudgens, $325 for Ms. Bily, $200 for Mr. Contreras and Ms. Frederick, and $40 for Mr. Radic.

| Name | Hourly Rate |
|---|---|
| Thomas Frederick | $450 - $650 |
| Johanna Hudgens | $350 - $450 |
| Sarah Bily | $325 |
| Jose Contreras | $200 |

| Leigh Frederick | $200 |
| Rudy Radic | $40 |

These hourly rates recognize Plaintiff's attorneys' successful results in this case, the complexity of the case, and their experience while also reflecting the local rates charged by attorneys in the Central District of Illinois.

### D. Reasonable Hours Worked

Having determined the reasonable hourly rates, the Court now turns to the reasonableness of the hours expended on this case. *See Hensley*, 461 U.S. at 433–34 (second part of the lodestar calculation is the number of hours reasonably expended). A fee applicant must provide sufficient documentation and exercise sound billing judgment. *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433; *see Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."). Courts should also "exclude from th[e] initial fee calculation hours that were not reasonably expended," including "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 (quotation marks omitted). "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (quotation marks omitted).

Plaintiff seeks an award of fees for six categories of activities which he claims were related to the successful prosecution of his ADA and RA claims against the IDOC, including (1) the preliminary injunction proceedings, (2) relevant discovery, (3) trial

preparation, (4) trial, (5) post-trial, and (6) his response to the IDOC's Motion to Vacate Judgment and for New Trial. (Doc. 476; Doc. 494).

### 1.  Preliminary Injunction Proceedings

Plaintiff seeks recovery of attorneys' fees related to his Motion for Preliminary Injunction filed on October 29, 2019, and the preliminary injunction hearings before Judge Harold Baker on December 2, 2019, and February 28, 2020. (Doc. 476 at p. 6). Plaintiff sought entry of a preliminary injunction directing Defendants IDOC, Wexford, Tilden, Ojelade, and Hansen to provide a medical examination and treatment for his "severe, constant leg and back pain that substantially limits his ability to walk and perform other basic functions." (Doc. 86 at p. 1). Plaintiff now asserts that, as established by the evidence at trial, it was only because of these proceedings that he finally received a second lumbar epidural steroid injection ("LESI") on August 6, 2020. Additionally, Plaintiff contends that the lack of access to medical treatments, including the second LESI, was one of the bases for his successful ADA and RA claims at trial.

Defendant argues that a substantial portion of Plaintiff's attorneys' billing entries are unreasonable because they pertain solely to the medical care claim against Wexford and its employees. Defendant argues these fees are not compensable because Plaintiff voluntarily withdrew his Motion for Preliminary Injunction midway through the hearing without securing relief from the IDOC. (Doc. 487 at pp. 14-16).

In his Reply, Plaintiff argues that testimony concerning the December 2, 2019, preliminary injunction hearing before Judge Baker was admitted at trial to demonstrate the IDOC's awareness of Plaintiff's repeated requests for ADA accommodations,

including additional steroid shots. (Doc. 492 at p. 14). Plaintiff argues the IDOC's failure to accommodate his requests for additional steroid shots was one of the six ways in which the IDOC failed to accommodate his disability. *Id.*

In his Motion for Preliminary Injunction, Plaintiff specifically asked for the following relief:

  a. That the Defendants be ordered to provide Plaintiff with access to an independent medical consultation regarding his leg and back pain to determine whether he is receiving adequate treatment;

  b. If the independent medical examiner determines that Plaintiff Holman is not receiving adequate medical treatment, that the Defendants be ordered to implement any recommendations of the independent medical examiner and provide adequate treatment; and

  c. Such other relief as this Court deems just and proper.

(Doc. 86 at p. 2). During the initial evidentiary hearing on December 2, 2019, Plaintiff's counsel focused solely on medical issues. Although the IDOC was represented by counsel at the hearing, Plaintiff's counsel neither addressed the IDOC directly nor referenced any programs, activities, or benefits that Plaintiff allegedly lacked access to due to the IDOC's actions. (Doc. 98). The IDOC was not given an opportunity to make opening remarks; instead, after Wexford's counsel began her opening, the Court interrupted, urging Plaintiff and Wexford to settle their dispute to conserve resources. *Id.* Soon after, Plaintiff reached an agreement with Wexford's counsel, and the Court adjourned. *Id.*

When the Court reconvened on February 28, 2020, for the continued evidentiary hearing, the Court again urged a resolution between Plaintiff and Wexford. (Doc. 132). Plaintiff's and Wexford's attorneys subsequently reached another agreement, the Court

adjourned, mooted Plaintiff's Motion for Preliminary Injunction, and ordered him to show cause as to why his deliberate indifference claim (not the ADA or RA claims against IDOC) should not be dismissed. (d/e 9/10/2020).

Here, the Court finds that Plaintiff's litigation of his Motion for Preliminary Injunction played a minor role in his success at trial. Testimony from the December 2, 2019, hearing before Judge Baker was admitted at trial to show Defendant IDOC's awareness of Plaintiff's repeated requests for ADA accommodations, including steroid shots. But as Plaintiff indicated in his Reply, the IDOC's refusal to accommodate his requests for additional steroid shots was only one of the IDOC's six failures to accommodate his disability. (Doc. 492 at p. 14).

The Court finds that awarding Plaintiff 25% of the fees for the preliminary injunction motion and hearings is appropriate. *See Seeklocal Inc. v. Ameritech Services Inc.*, No. 05-C-1212, 2007 WL 1847281, at *4 (E.D. Wis. June 26, 2007) ("Although the plaintiff later withdrew the preliminary injunction motion, the evidence presented at the two hearings, as well as the documentary evidence, played a critical role in resolving this case."). Thus, Winston will be awarded $12,740 in fees for the preliminary injunction proceedings. (Doc. 285 at pp. 5, 9).

| Attorney | Total Hours Billed | Reduced Hours | Hourly Rate | Fee Awarded |
|---|---|---|---|---|
| Thomas Frederick | 88.3 | 22.1[5] | $450 | $9,945 |
| Sarah Bily | 34.3 | 8.6 | $325 | $2,795 |

---

[5] For ease of calculating the attorneys' fees, the Court will round to the nearest tenth of an hour.

| TOTAL | | | | $12,740 |
|---|---|---|---|---|

### 2. Relevant Discovery

Plaintiff also seeks attorneys' fees for conducting relevant discovery. (Doc. 476 at p. 6). Plaintiff states that this category of work includes specific discovery activities that were directly related to successfully prosecuting his ADA and RA claims against the IDOC, including: (1) Defendant Dr. Tilden's deposition; (2) two depositions of Plaintiff's treating physician, Dr. Khalid Malik; (3) preparation of the expert report and the deposition of Plaintiff's expert witness, Elizabeth Stanosheck; (4) the Rule 30(b)(6) deposition of IDOC; and (5) Defendant Hansen's deposition.

Defendant does not raise any specific objections to Plaintiff's fees for relevant discovery but argues the attorneys' fees and expenses Plaintiff seeks should be reduced because they are disproportionate to the verdict. The Court does not find that a reduction in fees is appropriate simply because Plaintiff received only 27% of what he asked the jury to award. Plaintiff's attorneys successfully obtained a $150,000 verdict on his ADA and RA claims. Thus, Winston will be awarded $73,182.50 in fees for conducting relevant discovery. (Doc. 285 at pp. 8, 13).

| Attorney | Total Hours | Hourly Rate | Fee Awarded |
|---|---|---|---|
| Thomas Frederick | 108.1 | $450 | $48,645 |
| Sarah Bily | 75.5 | $325 | $24,537.50 |
| TOTAL | | | $73,182.50 |

### 3. Trial Preparation

The "trial preparation" category includes fees incurred to prepare for the trial of Plaintiff's ADA and RA claims. Other than its general assertion that the requested fees are disproportionate to the verdict, Defendant does not include any specific objections to the fees for trial preparation. The Court has reviewed the time entries and finds they are reasonable. (Doc. 485 at pp. 13-18, 20-25). Thus, Winston will be awarded the following fees for trial preparation, totaling $51,912.50:

| Attorney | Total Hours | Hourly Rate | Fee Awarded |
|---|---|---|---|
| Johanna Hudgens | 34.2 | $350 | $11,970 |
| Sarah Bily | 11.7 | $325 | $3,802.50 |
| Jose Contreras | 163.5 | $200 | $32,700 |
| Leigh Frederick | 6.3 | $200 | $1,260 |
| Rudy Radic | 54.5 | $40 | $2,180 |
| **TOTAL** | | | **$51,912.50** |

### 4. Trial

For the trial of Plaintiff's ADA and RA claims on January 29, 2024, through February 1, 2024, Plaintiff requests fees for 42.5 hours for Ms. Hudgens, 54.25 hours for Mr. Contreras, 37.9 hours for Ms. Frederick, and 42.5 hours for Mr. Radic. (Doc. 285).

Defendant argues that Plaintiff's fees are unreasonable due to excessive staffing at trial. Specifically, Defendant contends that two additional attorneys from Winston, Mr. Contreras and Ms. Frederick, were present at trial but performed no legal services for

Plaintiff. Defendant asserts that merely sitting at counsel's table without performing any substantive or demanding work is objectively unreasonable and that none of their hours should be counted, nor should their corresponding travel, lodging, or other expenses.

In his Reply, Plaintiff asserts that, as demonstrated by their billing entries, Ms. Frederick and Mr. Contreras performed legal services for Plaintiff during trial and their presence in the courtroom was essential.

According to the documentation Plaintiff submitted in support of his Motion, Mr. Contreras billed a total of 54.25 hours at $437 per hour for the trial, totaling $23,707.25 in fees. (Doc. 485 at p. 25). Ms. Frederick billed a total of 37.9 hours at $437 per hour, totaling $16,562.30 in fees. *Id.* at p. 26. Ms. Frederick billed 9 hours on January 29, 2024, and 9.5 hours on January 30, 2024, for simply attending the trial. *Id.* at p. 25. Similarly, Mr. Contreras billed 15.25 hours on January 29, 2024, for "attend trial; review rough transcript from the day and identify points of interest; discuss with team trial strategy; review and take notes during trial," 15 hours on January 30, 2024, and 18.5 hours on January 31, 2024. *Id.* at p. 24.

"Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in the private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. Courts can reduce awards where the collaboration among attorneys has led to duplicative work and excessive billing. *See Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 857–58 (7th Cir. 2009) ("[D]istrict

courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees."). However, while "the tendency of law firms to overstaff a case should cause the trial court to scrutinize a fees petition carefully for duplicative time," *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989), the mere fact that "two lawyers have billed for the same task does not mean that the hours should be deducted." *Gibson v. City of Chi.*, 873 F. Supp. 2d 975, 989 (N.D. Ill. 2012); *see also Tchemkou v. Mukasey*, 517 F.3d 506, 511–12 (7th Cir. 2008) ("The practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's [sic] trying to wade through the issue alone.").

The Court recognizes that Ms. Frederick and Mr. Contreras provided legal services to Plaintiff during the trial; however, billing a total of $40,269.55 for two additional attorneys to attend the trial was unnecessary and excessive. Mr. Contreras and Ms. Frederick read deposition transcripts into the record at trial, but Mr. Berry or Mr. Radic, who billed at a lower rate, could have read the transcripts. Although it is valuable for recent law school graduates to gain trial experience, passing this cost along to the losing party is inappropriate, as Plaintiff was also represented by two partners, Mr. Frederick and Ms. Hudgens, at trial. *See Gorman v. Easley*, No. 95-0475-CV-W-3, 1999 WL 34808611, at *2 (W.D. Mo. Oct. 28, 1999) (finding that the presence of three attorneys during trial was unreasonable and awarding only half of the time they billed for being present at trial). The Court will award 50% of the fees Mr. Contreras and Ms. Frederick billed for their work during the trial. Defendant did not include any specific objections regarding

the time Ms. Hudgens and Mr. Radic spent on the trial, and the Court sees no reason to reduce their hours. (Doc. 485 at pp. 15, 19). Thus, Winston will be awarded a total amount of $30,045 in fees for the trial.

| Attorney | Total Hours | Hourly Rate | Fee Awarded |
|---|---|---|---|
| Johanna Hudgens | 42.5 | $450 | $19,125 |
| Jose Contreras | 27.1 | $200 | $5,420 |
| Leigh Frederick | 19 | $200 | $3,800 |
| Rudy Radic | 42.5 | $40 | $1,700 |
| **TOTAL** | | | **$30,045** |

### 5. Post-Trial

Plaintiff seeks fees for pursuing post-trial injunctive relief on his ADA and RA claims. Plaintiff's request for injunctive relief was ultimately mooted when the IDOC agreed to transfer him to Dixon. (Doc. 476 at p. 7; Doc. 285). In its Response, Defendant did not include any specific objections to the time Plaintiff's attorneys spent pursuing post-trial relief. (Doc. 487). Thus, Winston will be awarded $1,660 in attorneys' fees for their post-trial work. (Doc. 485 at pp. 16, 20, 26).

| Attorney | Total Hours | Hourly Rate | Fee Awarded |
|---|---|---|---|
| Johanna Hudgens | 4.0 | $350 | $1,400 |
| Leigh Frederick | 0.3 | $200 | $60 |
| Rudy Radic | 5.0 | $40 | $200 |
| **TOTAL** | | | **$1,660** |

### 6. Plaintiff's Opposition to IDOC's New Trial Motion

Plaintiff seeks an additional fee award of $19,995.70 for preparing a response to Defendant's Motion to Vacate Judgment and for New Trial. (Doc. 494). As stated above, the Court denied Defendant's Motion. Therefore, as the prevailing party, Plaintiff is entitled to recover reasonable attorneys' fees incurred for responding to the Motion.

In its Response, Defendant asserts that Plaintiff's billing entries reveal inefficiencies, duplicative work, and clerical tasks. (Doc. 495 at p. 3).

The Court has reviewed Plaintiff's billing entries and finds they are largely reasonable and adequately described. (Doc. 494 at pp. 16-18). However, the Court will eliminate the 1.8 hours that Ms. Frederick billed for checking citations and proofreading on October 18, 2024, because a paralegal could have completed these tasks at a lower rate. Winston will be awarded $8,765 in attorneys' fees for responding to the New Trial Motion. (Doc. 494 at pp. 16-18).

| Attorney | Total Hours | Hourly Rate | Fee Awarded |
|---|---|---|---|
| Johanna Hudgens | 4.7 | $350 | $1,645 |
| Jose Contreras | 26.6 | $200 | $5,320 |
| Leigh Frederick | 9 | $200 | $1,800 |
| **TOTAL** | | | **$8,765** |

42

As illustrated below, Winston is awarded a total of $178,305 in attorneys' fees.

| Category | Fee Awarded |
|---|---|
| Preliminary Injunction | $12,740 |
| Relevant Discovery | $73,182.50 |
| Trial Preparation | $51,912.50 |
| Trial | $30,045 |
| Post-Trial | $1,660 |
| IDOC's New Trial Motion | $8,765 |
| **TOTAL** | **$178,305** |

### 7. Mr. Frederick's Request for Attorneys' Fees

Mr. Frederick states his applicable billing rate for 2024 under the Laffey Matrix is $1,057 per hour. (Doc. 476 at p. 18, ¶ 8). Applying this rate, Mr. Frederick seeks a fee award of $21,140 for 20 hours. *Id.* Mr. Frederick has not maintained billing records since his retirement from Winston while practicing law part-time under the d/b/a of the Law Offices of Thomas J. Frederick. *Id.* Mr. Frederick estimates that he has devoted more than 250 hours preparing for and trying Plaintiff's ADA and RA claims against Defendant IDOC since his retirement. *Id.* The rationale for Mr. Frederick's use of 20 hours is that he spent at least that amount of time in the visible presence of the Court during the pretrial proceedings and trial in 2024. *Id.* Defendant did not raise any arguments specifically objecting to Mr. Frederick's request for fees after his retirement from Winston.

Although Mr. Frederick has not supplied any billing records to substantiate his time, it is undeniable that Mr. Frederick spent more than 20 hours attending pretrial hearings and a four-day jury trial in 2024 and many more hours he is not seeking fees for. The Court will award fees for the requested 20 hours at the hourly rate of $650 for a total of $13,000 in fees.

### E.  Costs and Expenses

As the prevailing party in a civil rights case, Plaintiff is entitled to recover litigation expenses incurred in prosecuting the case pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988. *See* 28 U.S.C. § 1920; 42 U.S.C. § 1988; FED. R. CIV. P. 54(d); *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994) ("[E]xpenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates . . . are part of the reasonable attorney's fee allowed by the Civil Rights Attorney Fees Awards Act.").

Although there is a strong presumption that the prevailing party will recover costs, *Park v. City of Chi.*, 297 F.3d 606, 617 (7th Cir. 2002), the "party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable," *Trs. of the Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). Once the prevailing party demonstrates that costs should be allowed, the losing party then bears the burden to affirmatively show that the taxed costs are not appropriate. *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005). Generally, only the losing party's inability to pay or misconduct by the prevailing party worthy of penalty will suffice to justify denying costs. *Weeks v. Samsung Heavy Indus. Co.*,

*Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997). Ultimately, the decision of whether to award costs is within the district court's discretion. *M.T. Bonk Co., v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991).

Plaintiff seeks $89,941.19 in costs and expenses, including:

| Category | Amended Winston Expense Chart Line Nos. (Doc. 485 at pp. 28-51) | Amount |
|---|---|---|
| Expert Witness Fees | 16, 22, 26-27, 31-32, 34-37, 83, 134 | $35,877.20 |
| Expert Witness Expenses | 82, 122 | $623.78 |
| Court Reporter, Videographer, and Transcript Fees | 4, 18-19, 21, 23-25, 28-30, 33, 58, 84-85, 132- 133, 145 | $24,057.37 |
| Printing and Copying | 146, 150-153, 156-157 | $10,863.36 |
| Lodging | 49, 92, 125 | $1,330.57 |
| Meals | 1-2, 9-10, 15, 40-42, 44, 46-48, 50-51, 53-54, 60-61, 64-65, 87-88, 91, 94-97, 104-107, 109, 112-114, 124, 126-128 | $1,692.40 |
| Miscellaneous Hotel Expenses | 52, 55, 56-57, 62-63, 66-72, 75-79, 117-121 | $851.53 |

| | | |
|---|---|---|
| Travel and Transportation | 3, 5-8, 11-14, 38-39, 45, 73-74, 86, 89-90, 93, 102-104, 108, 110, 115-116, 123, 129-131, 143-144 | $4,369.18 |
| Postage and Federal Express | 17, 20, 135-142, 147-149, 154-155 | $382.35 |
| Messenger Services | 43, 81 | $836.80 |
| Additional Lodging, Trial Site Workroom Rental, and Other Hotel Expenses Incurred During Trial | Doc. 494 at pp. 20-30 | $9,056.65 |
| **TOTAL** | | **$89,941.19** |

(Doc. 492 at pp. 16-17; Doc. 494 at pp. 5, 20-30).

Defendant IDOC argues Plaintiff is not entitled to "litigation expenses" under the RA's statutory scheme and that Plaintiff's costs for his expert, travel expenses, meals, mileage, lodging, rental car fees, and postage are not recoverable under section 1920. (Doc. 487 at pp. 17-19).

The Court addresses each category of Plaintiff's costs and expenses below.

**1. Expert Witness Fees and Expenses**

Plaintiff requests $35,877.20 for expert witness fees and $623.78 for expert witness expenses for his expert witnesses, Dr. Khalid Malik and Elizabeth Stanosheck. (Doc. 492 at p. 16; Doc. 285, Exhibit 2 at Nos. 16, 22, 26-27, 31-32, 34-37, 83, 134).

Defendant asserts Plaintiff is not entitled to costs for his expert witnesses' travel, lodging, and expert fees. Defendant argues that although section 1988(c) can authorize an award of expert fees, RA claims do not fall under this section. According to Defendant, Congress's authorization for fee shifting is limited to the provision of the statute, and because the provision that pertains to fee shifting under the RA, 29 U.S.C. § 794a(b), does not expressly authorize shifting of expert fees, they are not allowed in this case, nor are Ms. Stanosheck's lodging, travel, meals, or other expenses.

Plaintiff did not provide any caselaw to support his request for expert witness fees. Plaintiff's action in this case was based on section 1983. "In providing for an award of attorney's fees, § 1988(b) lists specific statutory sections, including § 1983, under which attorney's fees may be awarded. Had Congress wished to include expert fees for § 1983 actions when it amended § 1988(c) to include actions under § 1981 or § 1981a, it was certainly aware of how to do so." *Walker v. City of Milwaukee*, No. 20-CV-487, 2024 WL 1344244, at *11 (E.D. Wis. Mar. 29, 2024); *see also Awalt v. Marketti*, No. 11 C 6142, 2018 WL 2332072, at *7 (N.D. Ill. May 23, 2018) ("The Court finds that Section 1988 does not permit recovery of expert fees in a Section 1983 case, and so will not award them here."); *Jackson v. Birkey*, No. 1:14-CV-01108-MMM, 2019 WL 2305135, at *6 (C.D. Ill. May 30, 2019) ("To date, the statute still does not permit courts to award expert fees to prevailing parties in cases brought pursuant to 42 U.S.C. § 1983."); *Thorncreek Apartments I, LLC v. Vill. of Park Forest*, No. 08 C 1225, 2016 WL 4503559, at *11 (N.D. Ill. Aug. 2016), *aff'd sub nom. Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626 (7th Cir. 2018) (same).

The Court will award the $40-per-day witness fee under 28 U.S.C. § 1821(b) and a portion of Ms. Stanosheck's lodging expenses for the trial. *See Fields v. City of Chi.*, No. 10 C 1168, 2018 WL 253716, at *11 (N.D. Ill. 2018) (finding that the travel, subsistence, and lodging expenses for expert witnesses were reasonable and properly recoverable); *see also Jackson*, 2019 WL 2305135, at *6 (awarding $40 for expert's attendance at trial and travel expenses).

When reviewing Plaintiff's spreadsheet of costs and expenses, the only entry that could be related to travel and lodging expenses is line 83, which states: "Elizabeth Stanosheck … 2/6/2024 Professional services for Jan 09 – Feb 02, 2024" in the amount of $18,762.20. (Doc. 485 at p. 40, line 83). The Court cannot parse what amount from this lump sum is attributable to Ms. Stanosheck's travel and lodging expenses for the trial. However, according to an invoice Plaintiff provided for hotel expenses, Ms. Stanosheck's hotel room for four nights during the trial was $731.40. (Doc. 494 at p. 23). Defendant should not be required to pay for Ms. Stanosheck to attend trial on days when she was not testifying. Therefore, the Court will reduce her lodging expenses to two nights during trial because she testified on January 30, 2024, and January 31, 2024. (Docs. 441 and 442). Plaintiff is entitled to $80.00 for Ms. Stanosheck's witness fee under section 1821(b) and $365.70 for her lodging expenses, totaling $445.70.

### 2. Court Reporter, Videographer, and Transcript Fees

Plaintiff seeks $24,057.37 for court reporter, videographer, and deposition transcript fees. Defendant did not raise any objection to these fees. Plaintiff is awarded $24,057.37.

### 3. Printing and Copying

Plaintiff seeks $10,863.36 for printing and copying. Defendant did not object to Plaintiff's request for printing and copying fees. Therefore, Plaintiff is awarded $10,863.36.

### 4. Lodging

Plaintiff requests $1,330.57 for "Lodging." This is comprised of $125 for Mr. Berry's hotel room on January 29, 2024, during trial (Doc. 485 at p. 34, line 49); $582.81 for Ms. Hudgens' hotel room during the trial from January 26, 2024, through February 2, 2024. (*id.* at p. 47, line 92); and $622.76 for Mr. Contreras' hotel room during the trial from January 26, 2024, through February 2, 2024 (*id.* at p. 52, line 125). These line items appear to be duplicative of the costs for lodging Plaintiff seeks in his Supplemental Memorandum. (Doc. 494 at p. 23). The Court addresses the lodging expenses in more detail below.

### 5. Meals

Plaintiff seeks $1,692.40 for meals. Meal expenses for counsel and paralegals are not recoverable expenses. *See Jackson*, 2019 WL 2305135, at *5; *Walker*, 2024 WL 1344244, at *11 (citing *Fields*, 2018 WL 253716, at *11) ("All expenses for meals must be deducted from the expenses claimed. Fields has made no attempt to justify recovering these as properly recoverable expenses; presumably those involved would have had to eat even had they not been involved in this case.")). Plaintiff's request for expenses will be reduced by $1,692.40.

### 6. Miscellaneous Hotel Expenses

Plaintiff seeks $851.53 for "Miscellaneous Hotel Expenses." These expenses include (1) $585.41 for Mr. Berry's "MISC hotel expenses, meals, snacks, beverages, parking" during trial from January 28, 2024, through February 2, 2024 (Doc. 485, Exhibit 2 at lines 52, 55-57, 62-63, 66-72, 75-79); (2) $121.02 for Mr. Radic's hotel lodging on February 3, 2024 (*id.* at line 117); and (3) $145.10 for Mr. Radic's Uber rides on February 3, 2024 (*id.* at lines 118-121).

Although Mr. Berry's parking expenses during trial would be recoverable under section 1988, the expenses for meals, snacks, and beverages are not. *See Walker*, 2024 WL 1344244, at *11 (finding parking fees recoverable under section 1988); *Jackson*, 2019 WL 2305135, at *5 (finding that the cost of food is not reimbursable). Plaintiff did not submit copies of any invoices to substantiate his "miscellaneous hotel expenses." As a result, the Court cannot determine what amount Mr. Berry incurred for parking. Therefore, Plaintiff cannot recover costs in the amount of $585.41 for Mr. Berry's "MISC hotel expenses, meals, snacks, beverages, parking."

Plaintiff seeks $121.02 for Mr. Radic's hotel lodging, but this appears duplicative of the five nights of lodging expenses Plaintiff requests in his Supplemental Memorandum. (Doc. 494 at p. 23).

Finally, Plaintiff seeks $145.10 for Mr. Radic's Uber charges on February 3, 2024. (Doc. 485, Exhibit 2 at lines 117-121). According to the description on the spreadsheet Plaintiff submitted, it appears that the Uber charges were incurred while traveling home from the airport. *Id.* Although receipts were not provided for the Uber charges, these costs were adequately documented on Plaintiff's expenses chart and are not unreasonable. *See*

50

*Telular Corp. v. Mentor Graphics Corp.,* No. 01 C 431, 2006 WL 1722375, at *10, n.12 (N.D.

Ill. June 16, 2006) (finding that parking and mileage expenses, which were unsupported

by receipts, were reasonable). The Court finds the Uber expense is more appropriate for

the "Travel and Transportation" category and will add it to that total below to avoid

confusion.

### 7.  Travel and Transportation

Plaintiff seeks a total of $4,369.18 for "travel and transportation." Defendant

asserts that Plaintiff is not entitled to any travel and transportation expenses because

attorney travel expenses, Uber rides, and hotel accommodations are not among the items

enumerated in section 1920. (Doc. 487 at p. 19).

A "prevailing party" under section 1988 "may recover reasonable out-of-pocket

expenses in addition to those that would be awarded to a prevailing party in a civil action

under Rule 54(d)." *Corcoran v. City of Chi.,* No. 10-cv-06825, 2015 WL 5445694, at *5 (N.D.

Ill. Sept. 15, 2015); *see also Henry v. Webermeier,* 738 F.2d 188, 192 (7th Cir. 1984) ("The Act

seeks to shift the cost of the winning party's lawyer . . . to the losing party; and that cost

includes the out-of-pocket expenses for which lawyers normally bill their clients

separately, as well as fees for lawyer effort. The Act would therefore fall short of its goal

if it excluded those expenses."). Expenses recoverable under this provision "are distinct

from either statutory costs [under 28 U.S.C. § 1920] or the costs of the lawyer's time

reflected in hourly billing rates," and include expenses such as postage, travel, expert

witnesses, and computerized research. *Downes,* 41 F.3d at 1144 (quoting *Heiar v. Crawford*

*Cnty.*, 746 F.2d 1190, 1203–04 (7th Cir. 1984)); *Corcoran*, 2015 WL 5445694, at *5. The Court rejects Defendant's contention that all travel expenses should be denied.

That being said, the Court has reviewed Plaintiff's travel and transportation expenses and finds that some line items must be reduced or eliminated. (Doc. 485, Exhibit 2 at lines 3, 5-8, 11-14, 38-39, 45, 73-74, 86, 89-90, 93, 102-104, 108, 110, 115-116, 123, 129-131, 143-144). The following expenses will be reduced:

- Plaintiff is entitled to 25% percent, or $139.50, of Mr. Frederick's and Mr. Berry's mileage and parking expenses for attending the preliminary injunction hearing. *Id.* at lines 3, 5, 7-8, 13-14. As stated above, the Court found Plaintiff was entitled to only 25% of his attorneys' fees for the preliminary injunction hearing.

- Plaintiff is entitled to 50%, or $697.57, for Mr. Contreras' travel expenses for the trial, including $131.03 for Uber rides, $79.50 for hotel parking, and $1,184.60 for car rental/fuel. *Id.* at lines 123, 129-131. As previously stated, the Court found that Plaintiff was entitled to 50% of the fees Mr. Contreras billed for the trial.

The Court finds that Plaintiff is not entitled to the following expenses:

- $16.42 in mileage for Mr. Berry to retrieve exhibits and materials from the office for the preliminary injunction hearing, $16.42 in mileage for Mr. Berry to return the exhibits and materials to the office after the hearing, and $49.00 for parking when he returned the cart/materials to the office. *Id.* at lines 6, 11-12.

- $70.93 for Mr. Berry's Uber rides in Peoria on January 27, 2024, and February 1, 2024, as Mr. Berry rented a car for the trial. *Id.* at lines 38, 45, 73-74.

- $156.02 for "Dial Car, Inc" in Staten Island on January 28, 2024, as it is unclear what this expense was for, and no invoice or description was provided. *Id.* at line 110.

- $48.39 for Mr. Berry's two Uber rides on January 20, 2024, under the category of "Trial Preparation," as no rationale or description for the charges was provided. *Id.* at lines 143-144. *See Nichols v. Ill. Dep't of Transp.*, 4 F.4th 437, 443 (7th Cir. 2021) ("reasonable travel warrants attorneys' fees, but unnecessary or unsupported travel does not").

The Court finds that the expenses at lines 38-39, 86, 89-90, 93, 102-104, 108, and 115-116 totaling $2,058.89 were necessary and reasonable. Plaintiff will be awarded a total of $3,041.06 in expenses for "Travel and Transportation." The total amount includes the reduced amount of $139.50 for the travel expenses associated with the preliminary injunction hearing, the reduced amount of $697.57 for Mr. Contreras' travel expenses, and $145.10 for Mr. Radic's Uber expense on February 3, 2024.

### 8. Postage, Federal Express, and Messenger Services

Defendant asserts that postage expenses, FedEx fees, and messenger service costs are not recoverable under section 1920. "Costs for postage and mail services have consistently been disallowed on the grounds that these expenses are generally considered overhead, or part of the cost of operating a law firm." *Barn II, Inc.*, 2019 WL 4266520, at *9 (quoting *Alexander v. CIT Tech. Fin. Servs., Inc.*, 222 F. Supp. 2d 1087, 1092 (N.D. Ill. 2002)). Therefore, $382.35 for postage and Federal Express expenses and $836.80 for messenger services are excluded.

9.  **Lodging, Trial Site Workroom Rental, and Other Hotel Expenses Incurred During Trial**

On November 19, 2024, Plaintiff filed a Supplemental Memorandum of Law in Support of His Amended Motion for an Award of Attorneys' Fees and Costs seeking an additional award of $6,399.75 for lodging during the trial and $2,665.90 for renting a trial site workroom at the hotel with high-speed internet access. (Doc. 494 at pp. 13-14, 24-30). Plaintiff states that these expenses were mistakenly omitted from his Amended Motion for Attorneys' Fees and Costs. Defendant filed a Response noting discrepancies regarding the dates listed on the hotel invoices. (Doc. 495 at pp. 5-6). In his Surreply Memorandum, Plaintiff clarified the discrepancies regarding the dates on the invoices and attached an affidavit from Mike Thompson, the Trial Support Specialist at Winston, who made the hotel reservations. (Doc. 497 at pp. 6-8). In her accompanying Declaration, Ms. Hudgens clarifies that despite the word "catering" on the invoice, the charges for the workroom did not include any food. *Id.* at pp. 14, 22.

Defendant argues that Plaintiff did not need to rent a workroom because counsel could have used one of their hotel rooms for meetings. The Court does not see how it would be feasible for Plaintiff's six-person trial team to meet in a hotel room. The Court also notes that the charge for the workroom included high-speed internet access, which presumably was necessary for conducting online legal research and sharing documents. *Id.* at 24-30.

The Court finds that Plaintiff is entitled to these additional expenses. This case had to be tried because it could not be reasonably settled. Therefore, a workspace to maintain

confidentiality while conversing about the trial, high-speed internet access, and lodging were necessities, including the extra day for the paralegal, who presumably needed time to set up, and the associate attorneys who assisted with the trial. As stated above, Plaintiff was awarded expenses for two nights of lodging for his expert witness, Ms. Stanosheck. That amount will not be added again here to avoid duplication. Plaintiff is awarded $5,668.35 for his trial team's lodging and $2,665.90 for renting a trial site workroom with high-speed internet access. In total, Plaintiff is awarded $46,741.74 in expenses, as illustrated on the table below.

| Category | Expenses Awarded |
| --- | --- |
| Expert Witness Fees and Lodging | $445.70 |
| Court Reporter, Videographer, and Transcript Fees | $24,057.37 |
| Printing and Copying | $10,863.36 |
| Travel and Transportation | $3,041.06 |
| Lodging for Trial Team | $5,668.35 |
| Trial Site Workroom Rental / Internet Access | $2,665.90 |
| **TOTAL** | **$46,741.74** |

**IT IS THEREFORE ORDERED:**

1. **Defendant's Motion to Vacate Judgment and for a New Trial [477] is DENIED.**

2. **Plaintiff's Amended Motion for an Award of Attorneys' Fees and Costs [476] is GRANTED IN PART and DENIED IN PART. The Court awards $178,305 in attorneys' fees to Winston & Strawn LLP, $13,000 in attorney's fees to Thomas Frederick d/b/a of the Law Offices of Thomas J. Frederick, and $46,741.74 in expenses to Winston & Strawn LLP.**

**3. The Clerk is directed to file an amended judgment to reflect the award of expenses and attorneys' fees.**

ENTERED:    12/16/2024

s/ James E. Shadid
James E. Shadid
U.S. District Court Judge